UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHNNY B. BROWN,

                        Plaintiff,

    v.                                No. 18-CV-2628 (KMK)

DONALD VENETTOZZI, *et al.*,        OPINION & ORDER

                        Defendants.

---

Appearances:

Johnny B. Brown
Malone, NY
*Pro Se Plaintiff*

Jennifer Rose Gashi, Esq.
State of New York Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Johnny B. Brown ("Plaintiff"), currently incarcerated at Upstate Correctional Facility, brings this Action under 42 U.S.C. § 1983 against Donald Venettozzi ("Venettozzi"), C.O. Crofoot ("Crofoot"), Captain Carey ("Carey"), and Commissioner's Hearing Officer ("CHO") Gutwein ("Gutwein") (collectively, "Defendants"). Plaintiff alleges that Defendants violated his constitutional rights when they falsely accused Plaintiff of instigating a fight with another inmate at Green Haven Correctional Facility ("Green Haven"), found Plaintiff guilty of the offense at a subsequent disciplinary hearing, and directed Plaintiff to be sent to a Special Housing Unit ("SHU") for 210 days. (*See* Compl. 1, 5–6 (Dkt. No. 2).) Before the Court is Defendants'

Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Not. of Mot. (Dkt. No. 28).) For the reasons stated herein, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint and exhibits referenced therein and are taken as true for the purpose of resolving the instant Motion.[1]

Plaintiff alleges that he was falsely accused of causing a violent incident against another inmate named Hendricks. (Compl. 2–3.)[2] The incident occurred on March 29, 2015 in the A&B Yard in Green Haven. (*Id.*) Following the incident, Defendant Crofoot and another, non-party correction officer allegedly filed false inmate misbehavior reports against Plaintiff. (*Id.*) The first misbehavior report, filed by Crofoot, accused Plaintiff of fighting Hendricks and creating a disturbance, and the second, filed by the non-party correction officer, accused Plaintiff of carrying a weapon. (*Id.* at 2.) Both reports were served on Plaintiff on April 1, 2015. (*See* Compl. Exs. 5.) Plaintiff alleges that, although Hendricks was attacked with a weapon during the incident in question, Plaintiff did not commit "the charged conduct." (Compl. 3.)

Subsequently, Plaintiff was subject to a disciplinary hearing, which began on April 7, 2015. (*Id.*) Plaintiff was provided with an assistant, and they met to discuss the hearing on April 2, 2015. (*See* Compl. 3; Compl. Exs. 6.) Plaintiff informed his assistant that he wanted to call four inmate witnesses. (Compl. 3.) Three of them testified at the hearing; the fourth did not

---

[1] Plaintiff did not file the exhibits he cited in the Complaint with the Complaint. Defendants later asked Plaintiff to send them a copy of the exhibits. Plaintiff sent Defendants a letter with the relevant attachments, and Defendants subsequently filed them with the Court. (*See* Letter from Jennifer Gashi, Esq. to Court ("Compl. Exs.") (Dkt. No. 26).)

[2] To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page throughout the Opinion.

agree to testify. (*Id.*; *see also* Compl. Exs. 6.) Plaintiff also requested the A&B Yard Log Book and a packet of unusual incident reports, along with video surveillance of the yard at the time of the incident. (Compl. 3; *see also* Compl. Exs. 6.) Plaintiff was provided with the A&B Yard Log Book and the unusual incident reports, but not the surveillance footage. (Compl. 3; *see also* Compl. Exs. 6.) Defendant Gutwein wrote that the video was not available "as none exists" and denied the request on June 3, 2015. (Compl. Exs. 10; *see also* Compl. 4.) Plaintiff acknowledges that prison policies only require video footage to be retained for 10 to 30 days. (Pl.'s Mem. of Law in Opp'n to Mot. 3 ("Pl.'s Mem.") 3 (Dkt. No. 33).)

Plaintiff also alleges that the assistant assigned to his hearing provided inadequate assistance by failing to "obtain requested documentary and video evidence" before it was destroyed, including the surveillance video footage discussed above. (Compl. 4.) When Plaintiff asked for a new assistant, Gutwein denied it because such a request was "not allowed." (*Id.*; *see also* Compl. Exs. 10.)

Plaintiff further alleges that Defendant Carey repeatedly engaged in "off-the-record" conversations with Gutwein, pressuring and encouraging Gutwein to find Plaintiff guilty "no matter what the evidence showed." (Compl. 5.) Plaintiff requested video surveillance of the hearing itself, but Gutwein denied the request, stating that it was "not relevant." (Compl. 5; Compl. Exs. 10.)

Plaintiff alleges that Crofoot completely fabricated the misbehavior report and was not even present in the A&B Yard at the time of the violent incident. (Compl. 5.) When Plaintiff attempted to confront Crofoot about this on cross-examination, Gutwein allegedly instructed Crofoot not to answer those questions. (*Id.*)

3

On June 3, 2015, Gutwein concluded the hearing and found Plaintiff guilty of creating a disturbance but not of possessing a weapon. (Compl. 5; *see also* Compl. Exs. 8.) Plaintiff appealed the finding, but Defendant Venettozzi affirmed Gutwein's findings. (Compl. 6.) Plaintiff subsequently filed an Article 78 proceeding, but prison officials reversed and dismissed the hearing decision before the Article 78 proceeding was resolved. (*Id.*) By the time of the reversal, however, Plaintiff had already served the entirety of the punishment imposed on him. (*Id.* at 4.)

Plaintiff alleges that, in accordance with his punishment, he was held in SHU for 210 days. (*Id.* at 1, 4.) During that time, he was confined to a "small, dingy cell" and deprived access to educational facilities and other prison programming. (*Id.* at 6.) He also was not allowed to participate in social or recreational activities, had limited access to showers, and was deprived of all privileges and most of his personal property. (*Id.*)

B. Procedural History

Plaintiff's Complaint and Application to Proceed In Forma Pauperis ("IFP") were filed on March 23, 2018. (Dkt. Nos. 1, 2.) The Court granted Plaintiff's IFP Application on May 3, 2018. (Dkt. No. 7.) On May 14, 2018, the Court issued an Order directing service on Defendants. (Dkt. No. 9.) On November 2, 2018, Defendants filed a letter requesting a pre-motion conference in anticipation of filing a Motion To Dismiss. (Dkt. No. 24.) The Court granted the request and set a briefing schedule on November 13, 2018. (Dkt. No. 25.)

On December 13, 2018, Defendants filed the instant Motion to Dismiss and accompanying papers. (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 29).) Plaintiff filed a response in opposition to the Motion on February 12, 2019. (Pl.'s Mem.) On February 28, 2019, Defendants filed a reply. (Reply in Supp. of Mot. ("Defs.'

Reply") (Dkt. No. 34).) Plaintiff responded again on March 13, 2019. (Reply to Mot. ("Pl.'s Reply") (Dkt. No. 35).)

## II. Discussion

Defendants argue that Plaintiff fails to state a Fourteenth Amendment due process claim as to any Defendant and fails to sufficiently allege the personal involvement of Venettozzi in any constitutional violation. (Defs.' Mem. 10–19.) Defendants also argue that they are entitled to qualified immunity. (*Id*. at 19–21.) The Court will address each argument to the extent necessary.

### A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B. Analysis

1. Fourteenth Amendment Procedural Due Process Claims

The Court construes Plaintiff's Complaint, which raises allegations relating to his disciplinary hearing, (Compl. 7), to allege a Fourteenth Amendment procedural due process violation against Defendants. Defendants argue that Plaintiff fails to "articulate any liberty interest that he was deprived of by any of the named defendants." (Defs.' Mem. 11.) "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation, alterations, and quotation marks omitted). The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment). However, the Supreme Court has clarified that "[p]rison discipline implicates a liberty interest

7

[only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

The Second Circuit has explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s 'atypical and significant hardship' test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (citation omitted). The duration of disciplinary confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citations and quotation marks omitted). As a guidepost to determine whether due process protections are required in the prison context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Id.* at 64–65 (citation and quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same). Even a confinement period of 280 days is not necessarily evidence of deprivation of a liberty interest if the detainee fails to make specific allegations about the nature of the confinement, including time spent "within the cell, hygienic conditions, access to programs, as well as other conditions." *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 607 (S.D.N.Y. 2009). The Second Circuit has also suggested that "evidence of the psychological effects of prolonged confinement in isolation" may be helpful in developing the necessary record. *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000).

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing

8

officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted). "In the context of prison disciplinary hearings, the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with utter certainty, how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (italics and alterations omitted) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)). Ultimately, a guilty finding in an inmate disciplinary hearing only needs to be supported by "some evidence from which the conclusion . . . could be deduced." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455–56 (1985).

No party has discussed the factor of the length of disciplinary confinement, but the Court addresses it briefly here. The Complaint alleges that Plaintiff was subject to 210 days of confinement in SHU as a result of the disciplinary hearing at issue. (Compl. 1.) This is an "intermediate duration," one that requires the "development of a detailed record of the conditions of the confinement relative to ordinary prison conditions" for a district court to properly determine whether the confinement was "atypical." *Palmer*, 364 F.3d at 65 (citation and quotation marks omitted). Here, Plaintiff has alleged several specific deprivations he faced in SHU. For example, Plaintiff alleges that he was confined in a "small, dingy cell" at all times except for one hour of "exercise" that occurred in a "slightly larger cage with no equipment." (Compl. 6.) Additionally, Plaintiff alleges he did not have access to typical opportunities available to inmates, such as prison programming activities, socialization, recreational activities, and "most of his personal property." (*Id.*) Plaintiff was also limited to two showers per week,

9

and in those showers, was allegedly completely restrained. (*Id.*) These allegations support the plausibility of the Plaintiff's due process claim because they meet the *Sandin* standard of "atypical" punishment. *See Dawkins*, 646 F. Supp. 2d at 607 (suggesting that, for periods above 101 days in SHU, articulating details such as time spent within the cell, "hygienic conditions, access to programs, as well as other conditions" would "support a finding of atypical and significant hardship").

Overall, however, these allegations still fall short of alleging conditions involving "more onerous" or "atypical" conditions of confinement. While the Second Circuit has declined to "delineate the precise contours of 'normal' SHU confinement . . . it is sufficient to note that, ordinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004) (ultimately citing 7 N.Y.C.R.R. § 304.1–.14). Although Plaintiff notes that he was kept in SHU conditions for the "intermediate" period of 210 days, none of his allegations notes particularly "atypical and significant" conditions relative to the Second Circuit's understanding of "normal" SHU confinement. *Id.*; *Thomas v. DeCastro*, No. 14-CV-6409, 2019 WL 1428365, at *6 (S.D.N.Y. Mar. 29, 2019) (collecting cases dismissing procedural due process claims where the plaintiff failed to show the confinement imposed an atypical or onerous hardship); *Branch v. Goord*, No. 05-CV-6495, 2006 WL 2807168, at *4 (S.D.N.Y. Sept. 28, 2006) ("Plaintiff's privileges were withheld during confinement, but lost privileges do not constitute an atypical and significant hardship because they are within the expected parameters of the sentence imposed by a court of law." (citation and quotation marks omitted)).

Moreover, the length and severity of the punishment is not the only factor in determining whether Plaintiff's right to due process under the Fourteenth Amendment was violated. Even if Plaintiff's Complaint did plausibly allege "atypical and significant" hardship, his claims regarding the disciplinary hearing must nevertheless be dismissed because Plaintiff received due process.

Plaintiff alleges several potential grounds for denial of due process involving the remaining Defendants: Crofoot filed a false misbehavior report against Plaintiff and lied at Plaintiff's disciplinary hearing, Gutwein denied Plaintiff's request for a new assistant after the assistant failed to obtain video evidence for Plaintiff, Casey improperly influenced Gutwein through "off-the-record" commentary during Plaintiff's hearing, Gutwein denied Plaintiff's request for video evidence of the incident and of the hearing itself, Gutwein found Plaintiff guilty of the charges without sufficient evidence to support his decision, and Defendant Venettozzi summarily affirmed Gutwein's finding. (Compl. 3–6.) The Court addresses these issues as needed below.

Based on Plaintiff's allegations and the exhibits attached to his Complaint, Plaintiff was afforded the process he was due. *See Luna*, 356 F.3d at 487 (listing the characteristics of due process for inmate disciplinary hearings). For example, Plaintiff received copies of the two misbehavior reports 6 days in advance of the hearing. (Compl. 2–3; Compl. Exs. 4–5.) Plaintiff also received an assistant to help him prepare for the hearing, and the assistant helped Plaintiff obtain the Log Book and the unusual incidents report. (Compl. Exs. 6.) Plaintiff was able to call three out of four of his desired witnesses, and the fourth witness refused to testify. (Compl. 3; Compl. Exs. 6.) Plaintiff received a written statement of the disposition, articulating over a

11

dozen grounds to support the actions taken by the deciding officer. (*See* Compl. 5; Compl. Exs. 8.)

The Court notes, however, that Plaintiff has identified several Defendants in the hearing process that he alleges denied him due process. First, Plaintiff alleges that Crofoot's misbehavior report was false and that Crofoot lied at Plaintiff's hearing. Even if true, such conduct would not violate Plaintiff's due process rights, as an inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). False misbehavior reports may violate an inmate's rights only when they are filed "in retaliation for exercising a constitutionally protected right," which Plaintiff does not allege happened here, or when the inmate is "disciplined without adequate due process." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (citations and quotation marks omitted); *see also Casanova v. Maldonado*, No. 17-CV-1466, 2019 WL 3286177, at *8 (S.D.N.Y. July 22, 2019) ("[T]he filing of false disciplinary reports is not a constitutional violation, as long as the plaintiff was provided with all the due process rights to which he was entitled."). "This principle extends as well to false testimony by corrections personnel at prison disciplinary hearings." *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (dismissing due process claims against correction officers for false testimony at an inmate's disciplinary hearing). Accordingly, neither Crofoot's allegedly false misbehavior report nor allegedly false hearing testimony by itself violated Plaintiff's constitutional rights.

Second, Plaintiff alleges that Gutwein violated his constitutional rights by, among other things, refusing to grant Plaintiff a new assistant. (Compl. 4.) Plaintiff requested a new assistant because his original one did not locate the video surveillance that Plaintiff requested. (*Id.*) But

inmates have only a "limited" right to assistance at disciplinary hearings, *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993), and Plaintiff does not plausibly allege that assistance was inadequate here, especially when the assistant did help Plaintiff locate the A&B Yard Log Book, the unusual incidents report, and three out of the four witnesses Plaintiff wished to call at the hearing, (*see* Compl. Exs. 6). *See also Grant v. Fischer*, No. 14-CV-1382, 2017 WL 1180866, at *3 (N.D.N.Y. Mar. 29, 2017) (holding that assistant who provided inmate with five of ten requested items and told inmate that some of the remaining items "did not exist" fulfilled her constitutional obligations). Moreover, nothing suggests that, were Gutwein to grant Plaintiff a new assistant at the time of the hearing, the outcome of the hearing would have been different, let alone that the assistant would have been able to procure the video, which Plaintiff does not allege even existed. This alone dooms Plaintiff's claim. *See Louis v. Ricks*, No. 01-CV-9368, 2002 WL 31051633, at *15 (S.D.N.Y. Sep. 13, 2002) (applying harmless error analysis to determine whether assistance provided to inmate at disciplinary hearing was inadequate).

Third, Plaintiff alleges that Gutwein violated Plaintiff's constitutional rights by refusing to grant Plaintiff access to video footage of the surveillance camera in the area of the violent incident or of the hearing itself. However, these two exclusions alone do not constitute a violation of Plaintiff's constitutional rights. Although prison inmates have the right to present exculpatory evidence, prison officials "must have the necessary discretion to keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566. Here, Plaintiff fails to allege facts plausibly suggesting that Gutwein improperly limited the scope of the hearing when he refused to provide Plaintiff with footage of the hearing itself on grounds that it was not relevant to the proceedings. (Compl. 5.) The request for the surveillance footage of the incident was denied because such footage did not exist at the time of the request. (*Id.* at 4; Compl. Exs. 10). This refusal also does

not state a cognizable constitutional violation. *See Brooks v. Piecuch*, 245 F. Supp. 3d 431, 446–47 (W.D.N.Y. 2017) (holding that inmate's constitutional rights were not violated where the prison official "ma[d]e an effort to find [the] video to which [the] [p]laintiff [was] referring, though that effort was ultimately unfruitful").

Fourth, Plaintiff alleges that Casey improperly swayed Gutwein through "off-the-record" commentary, suggesting that the two were conspiring to find Plaintiff guilty. (Compl. 4–5.) Plaintiff does not, however, articulate above a "speculative level" the nature of the commentary or how such commentary improperly biased Defendant Gutwein. *Twombly*, 550 U.S. at 555; *see also Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983." (citation omitted)); *Edwards v. Mejia*, No. 11-CV-9134, 2013 WL 1092978, at *4 (S.D.N.Y. Mar. 15, 2013) (dismissing claims of bias where plaintiff made conclusory allegations that disciplinary hearing officer was biased and destroyed certain exculpatory evidence because of his alleged friendship with the citing officer and noting that plaintiff's ability to call witnesses was itself indicative of a fair and impartial hearing officer); *Hodges v. Jones*, 873 F. Supp. 737, 744 (N.D.N.Y. 1995) (dismissing claims of bias where plaintiff made conclusory allegations that hearing officer was "'pressured' to enter a guilty disposition by his superiors" and where hearing officer found plaintiff "not guilty on [one of the charges]"); *cf. Montalvo v. Lamy*, 139 F. Supp. 3d 597, 608–09 (W.D.N.Y. 2015) (denying dismissal of bias claim where plaintiff alleged that hearing officer did not permit plaintiff to call witnesses at disciplinary hearing).

Finally, Plaintiff alleges that Gutwein's disposition went against the weight of the evidence before him and that the disposition violated Plaintiff's due process rights. But Gutwein's decision ultimately was based on "some evidence" as required by *Hill*. *Hill*, 472 U.S.

at 455. In particular, the decision here articulated the specific evidence that Gutwein relied on, including the unusual incident report, the testimony of multiple inmates, including Hendricks, and the testimony of multiple members of prison staff. (*See* Compl. Exs. 8.) Indeed, that Gutwein did not prejudge the outcome of the hearing is evidenced by his conclusion that Plaintiff was not guilty of the weapons charge. (*Id*.) Plaintiff thus alleges no facts plausibly suggesting that Gutwein prejudged the evidence or otherwise acted as an "impartial decisionmaker." *Rahman*, 2011 WL 6028212, at *7.

### 2. Defendant Venettozzi

Plaintiff alleges that Venettozzi "summarily affirmed" Gutwein's disposition despite raising "these and other legitimate issues . . . in his appeal." (Compl. 6.) The Complaint does not allege that Venettozzi was a participant in any other aspect of the hearing. Defendants argue that this does not plausibly allege personal involvement and that, in any event, Venettozzi should be entitled to qualified immunity. (Defs.' Mem. 20–21.)

As discussed at length in *Colon v. Annucci*, 344 F. Supp. 3d 612 (S.D.N.Y. 2018), "[i]t is an open question in the Second Circuit whether an appeal officer may be held liable for failing to reverse the outcome of an allegedly unconstitutional disciplinary hearing." *Id.* at 630–31 (citation and quotations omitted). Consistent with *Colon*, the Court concludes that Venettozzi is entitled to qualified immunity here because this area of law is "unsettled," and it is not clear that "every reasonable official" would have known that affirming the findings of an allegedly procedurally defective hearing violates an inmate's constitutional rights. *Id*. at 631–32.[3]

---

[3] Because the Court dismisses the claims against the Defendants other than Venettozzi on their merits, it is not necessary to reach the questions of qualified immunity as to them. (*See* Defs.' Mem. 20.)

## III. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is granted. Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, (Dkt. No. 28), and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED: September 3, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

16