UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHNNY B. BROWN,

                                    Plaintiff,                    No. 18-CV-2628 (KMK)

        v.                                                        OPINION & ORDER

DONALD VENETTOZI, *et al.*,

                                    Defendants.

Appearances

Johnny B. Brown
Auburn, NY
*Pro Se Plaintiff*

Jennifer Rose Gashi, Esq.
State of New York Office of The Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Johnny B. Brown ("Plaintiff"), currently incarcerated at Auburn Correctional Facility,

brings this Action under 42 U.S.C. § 1983 against Donald Venettozi ("Venettozi"), Correction

Officer J. Crofoot ("Crofoot"), Captain Carey ("Carey"), Commissioner's Hearing Officer E.

Gutwein ("Gutwein"), and Sgt. R. Coccuzza ("Coccuzza"; collectively, "Defendants").  Plaintiff

alleges that Defendants violated his constitutional rights when they accused Plaintiff of

instigating a fight with another inmate at Green Haven Correctional Facility ("Green Haven"),

found Plaintiff guilty of the offense at a subsequent disciplinary hearing, and directed Plaintiff to

be confined in a Special Housing Unit ("SHU") for 210 days.  (*See* Am. Compl. (Dkt. No. 41).)

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 51).)  For the reasons stated herein, the

Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and exhibits

referenced therein, and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion.

(Am. Compl.; Pl. Mem. of Law in Opp'n to Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 57).)[1]  They

are taken as true for the purpose of resolving the instant Motion.

On March 29, 2015, another inmate was attacked in the A&B Yard at Green Haven.

(Am. Compl. 3.)  Plaintiff was wrongfully accused by Crofoot of fighting, and by non-party C.O.

I. Jordan ("Jordan") of having a weapon.  (*Id.*)  After the incident, "Plaintiff was confined" in

SHU and assigned Coccuzza to assist with his defense.  (*Id.* at 3, 32.)

Plaintiff met with Coccuzza on April 2, 2015, and requested testimony of "four inmate

witnesses"; documents, including the "A&B Yard log book, unusual incident reports, [and] any

to/from memos"; and "video surveillance from the yard at the time of [the] alleged incident."

(Am. Compl. 3–4; Pl.'s Mem. 8.)[2]  Coccuzza incompletely documented these requests, failing to

note Plaintiff's request for to/from memos and video surveillance.  (Pl.'s Mem. 18; Mem. of Law

---

[1] "[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider [P]laintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir.1987)).

[2] When citing Plaintiff's Amended Complaint and Memorandum, the Court refers to the ECF-generated page numbers in the top right-hand corner.

in Supp. of Defs.' Mot. ("Defs.' Mem.") Ex. B ("Assistance Form") (Dkt. No. 52-2).)[3] Coccuzza

filled out the assistance form, noting that three out of four witnesses agreed to testify, listing four

Corrections Officers who were working in A&B Yard at the time of the incident, and noting that

the unusual incident reports would be provided at the hearing. (Assistance Form.) Coccuzza did

not return to Plaintiff with the assistance form. (Am. Compl. 4, 26.) The assistance form does

not bear Plaintiff's signature; instead, it states that Plaintiff refused to sign. (Assistance Form;

Pl.'s Mem. 18–19.)[4] At his hearing on April 7, 2015, Plaintiff requested a new assistant, since he

had not received the requested documents. (Am. Compl. 31; Pl.'s Mem. 18; *see also* Compl. 3

(Dkt. No. 2) (noting that the hearing commenced on April 7, 2015).) Gutwein denied this

request, (Pl.'s Mem. 4, 6), and subsequently noted that a new assistant was "not allowed," (Am.

Compl. 44).

   At no point prior to the end of the hearing did Plaintiff receive the documents he

requested, including those listed in the assistance form. (Am. Compl. 6, 12; Pl.'s Mem. 3, 5, 18.)

   The video footage requested by Plaintiff came from the two cameras in A&B Yard, one

on the tower and one on the rec door. (Am. Compl. 4, 27–28.) In addition to requesting this

footage from Coccuzza on April 2, 2015, Plaintiff requested the same from Gutwein at his April

7, 2015 hearing. (Am. Compl. 27–28.) Depending on the camera and its location, video footage

is held for 14 to 30 days. (Pl.'s Mem. 7.) Thus, at the time of his April 2, 2015 request for

footage, and also at the time of his April 7, 2015 request for both video footage and a new

assistant, the video footage of the March 29, 2015 incident allegedly still existed. (*Id.*) Gutwein

---

   [3] The assistance form is incorporated by reference into Plaintiff's Amended Complaint.
(*See* Am. Compl. 6.)

   [4] Plaintiff was only provided with the assistance form during discovery after he sought
review of his guilty determination in state court. (Am. Compl. 6; Pl.'s Mem. 7.)

only requested the video footage on June 4, 2015, (Pl.'s Mem. 5, 7), at which point he stated that "none exists," (Am. Compl. 13, 19, 44).  Plaintiff alleges that this video footage "would have had a significant bearing on the outcome of [the] hearing."  (Pl.'s Mem. 8.)

While the assistance form completed by Coccuzza notes that only three out of four inmate witnesses agreed to testify, (Assistance Form), all four eventually testified on Plaintiff's behalf at his hearing on April 9, 2015, (Am. Compl. 34–42; Pl.'s Mem. 3, 7–8, 22).  Coccuzza did not interview these witnesses before they testified.  (Pl.'s Mem. 3, 7–9.)  At his hearing on June 1, 2015, Plaintiff separately requested testimony from the four witnesses that were listed on the assistance form as working in A&B Yard at the time of the incident, as well as from Jordan. (Am. Compl. 63; *see also id.* at 61 (noting the hearing date).)  Gutwein denied his request.  (Pl.'s Mem. 13.)[5]

During the pendency of the hearing, Gutwein had ex parte communications with both Carey and Crofoot.  (Am. Compl. 9.)  When Plaintiff attempted to elicit testimony from Crofoot regarding these ex parte conversations, Gutwein directed Crofoot not to answer.  (*Id*. at 9, 56, 62.)  Gutwein did not allow Carey to testify, even though he "gave off-the-record advice . . . throughout the duration of the hearing."  (*Id*. at 7–8.)  Plaintiff requested video of the hearing room, which Gutwein denied as "not relevant."  (*Id*. at 44.)

After the hearing concluded on June 3, 2015, Gutwein found Plaintiff guilty of all charges in Crofoot's report, but dismissed the weapons charge in Jordan's report.  (Am. Compl. 4.)  Gutwein on the same date prepared a statement of evidence relied upon in his decision.

---

[5] The record does not identify Gutwein's reasons for denying Plaintiff's request.

(Defs.' Mem. Ex. C ("Hearing Disposition") (Dkt. No. 52-3).)[6]  Gutwein imposed a penalty of 210 days SHU; loss of commissary, phone, and package privileges; and loss of seven months of good time.  (Am. Compl. 4–5.)

Plaintiff appealed the disposition to Venettozi on June 4, 2015.  (*Id.* at 5.)  Venettozi affirmed the decision in August 2015.  (*Id.*)  Plaintiff requested reconsideration; Venettozi summarily denied the request.  (*Id.* at 5, 51.)  On January 28, 2016, Plaintiff filed a petition in Albany County Supreme Court pursuant to New York Civil Practice Law & Rules Article 78. (*Id.* at 5.)  Plaintiff's petition was transferred to the Third Department.  (*Id.*)  Prior to an adjudication on the merits, the New York Department of Corrections and Community Supervision ("DOCCS") administratively reversed the decision at the recommendation of the New York Attorney General, and expunged all references to the alleged misconduct from Plaintiff's records.  (*Id.* at 5, 52.)  By the time DOCCS reversed its ruling, Plaintiff had already served his full 210-day SHU penalty.  (*Id.* at 5.)

While he was in SHU, Plaintiff was allowed just two showers per week and kept in solitary confinement for 23 hours per day.  (*Id.* at 17.)  In addition, Plaintiff had no control over the light in his cell, and cockroaches and rodents kept him up all night involuntarily.  (*Id.* at 18.) For the hour that he was allowed out of solitary confinement, Plaintiff was in full restraints, including handcuffs with a waist chain, which made it impossible to exercise.  (*Id.*)  He was deprived of all hygiene, property, meals, and programing opportunities.  (*Id.*)  Confinement in these conditions caused Plaintiff severe and prolonged mental, physical, and emotional pain, and

---

[6] The hearing disposition is incorporated by reference into the Amended Complaint, which discusses Gutwein's findings.  (*See* Am. Compl. 10–11.)

contributed to his divorce from his wife and broken bond with his daughter.  (*Id.* at 19; Pl.'s Mem. 16, 18.)

    B.  Procedural Background

    Plaintiff's Complaint and Application to Proceed In Forma Pauperis ("IFP") were filed on March 23, 2018.  (Compl; Dkt. No. 1.)  The Court granted Plaintiff's IFP Application on May 3, 2018.  (Dkt. No. 7.)  On May 11, 2018, the Court issued an Order directing service on Defendants.  (Dkt. No. 9.)  On September 3, 2019, the Court granted Defendants' Motion To Dismiss, and ordered Plaintiff to file an amended complaint, if he wished to do so, within 30 days.  (Op. & Order ("2019 Op.") (Dkt. No. 37).)  Plaintiff requested appointment of counsel on September 16, 2019.  (Dkt. No. 38.)  On September 30, 2019, the Court denied his request.  (Dkt. No. 39.)  On November 6, 2019, the Court issued an Order To Show Cause by December 6, 2019 as to why the case should not be dismissed for failure to prosecute.  (Dkt. No. 40.)  On November 12, 2019, Plaintiff's Amended Complaint was filed.  (Am. Compl.)  The Amended Complaint is dated October 22, 2019.  (*Id.* at 21.)  On December 6, 2019, Defendant requested an extension of time to February 6, 2020 to submit its Answer, in part so that Coccuzza, who was newly added as a Defendant to the Amended Complaint, could be served.  (Dkt. No. 44.)  The Court granted this request on December 10, 2019.  (Dkt. No. 45.)  The Court ordered service of Coccuzza on December 26, 2019.  (Dkt. No. 47.)[7]  On February 3, 2020, Defendants submitted a letter proposing a motion to dismiss.  (Dkt. No. 49.)  On February 13, 2020, the Court set a briefing schedule.  (Dkt. No. 50.)  Defendants filed the instant Motion on March 13, 2020.  (Not. of Mot.; Defs.' Mem.)  Plaintiff's response in opposition is dated May 13, 2020.  (Pl.'s Mem.)

---

[7] Coccuzza was served via mail on May 28, 2020.  (Dkt. No. 56.)

Defendants filed a reply on May 29, 2020.  (Reply in Supp. of Defs.' Mot. ("Defs.' Reply") (Dkt. No. 55).)

## II.  Discussion

Defendants argue that Plaintiff's Amended Complaint should be dismissed based on law of the case, (Defs.' Mem. 5–7); because Plaintiff does not allege that Gutwein, Carey, Crofoot, or Coccuzza violated his due process rights, (*id.* at 8–16); because Plaintiff does not allege that Venettozi was personally involved, (*id.* at 16–18); and because Defendants are entitled to qualified immunity, (*id.* at 18–20).  The Court will address each argument to the extent necessary.

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  And, the Court must "draw[] all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).  However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "his opposition memorandum," *Gadson*, 1997 WL 714878, at *1 n.2, and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

     B.  Analysis

          1. Law of the Case

     Plaintiff's Amended Complaint fails to cure many of the deficiencies identified in the 2019 Opinion.  For example, with respect to Carey's alleged conversations with Gutwein, the Court noted that the Complaint did not "articulate above a 'speculative level' the nature of the commentary or how such commentary improperly biased Defendant Gutwein," particularly because Gutwein dismissed the weapons charge against Plaintiff.  (2019 Op. 14–15.)  With respect to Crofoot's alleged false misbehavior report and testimony, the Court noted that "such conduct would not violate Plaintiff's due process rights, as an inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  (*Id*. at 12 (citation and quotation marks omitted).)

Finally, with respect to Venettozi's alleged summary affirmation of Plaintiff's discipline, the Court concluded that he "is entitled to qualified immunity here because this area of law is 'unsettled,' and it is not clear that 'every reasonable official' would have known that affirming the findings of an allegedly procedurally defective hearing violates an inmate's constitutional rights." (*Id*. at 15.)  The allegations in the Amended Complaint have the same flaws.

"The mere filing of an Amended Complaint does not entitle Plaintiff to relitigate his claims absent new factual allegations.  Because the Amended Complaint . . . is in large part identical to Plaintiff['s] first Complaint, the law of the case doctrine counsels against reconsideration of the Court's . . . dismissal of the first Complaint." *Weslowksi v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).  Accordingly, Plaintiff's claims against Carey, Crofoot, and Venettozi are dismissed for the same reasons they were dismissed in the 2019 Opinion.  *See Perkins v. Perez*, No. 17-CV-1341, 2020 WL 248686, at *4–5 (S.D.N.Y. Jan. 16, 2020) (applying the law-of-the-case doctrine to dismiss portions of a pro se complaint where the two pleadings at issue were "substantially identical"); *Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *4 (S.D.N.Y. Sept. 28, 2016) (same); *Guttilla v. City of New York*, No. 14-CV-156, 2016 WL 1255737, at *3 (S.D.N.Y. Mar. 29, 2016) (same).

Plaintiff makes two new claims, one against Crofoot and Gutwein, and another against Venettozi.  First, Plaintiff alleges that Crofoot had an off-the-record conversation with Gutwein, and that Gutwein refused to allow Crofoot to testify regarding these conversations.  (Am. Compl. 9.)  As with his claims against Carey, Plaintiff's allusions to a conspiracy involving Crofoot and Gutwein fail to pass the "speculative level."  (2019 Op. 14 (collecting cases).)  Thus, this claim is dismissed.  Second, in discussing his claims against Venettozi, Plaintiff refers to supervisory liability.  (Pl.'s Mem. 24.)  "[A] plaintiff may not rely on a special test for supervisory liability."

*Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020).  Instead, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official."  *Id*. Apart from improperly handling his appeal—conduct for which Venettozi is entitled to qualified immunity—Plaintiff makes no allegations about Venettozi's role in Green Haven's disciplinary process.  (*See generally* Am. Compl.; Pl.'s Mem.)  Thus, despite his discussion of supervisory liability, Plaintiff has not alleged any conduct by Venettozi for which he may be held liable.  *See Stancati v. County of Nassau*, No. 14-CV-2694, 2015 WL 1529859, at *3 (E.D.N.Y. Mar. 31, 2015) (dismissing supervisory liability claim "because the [c]omplaint does not allege any facts, other than [the p]laintiff's isolated constitutional violation, that create an inference that the [defendant's d]epartment maintained a policy" of acting consistent with the alleged violation); *Pierce v. Chautauqua County*, No. 06-CV-644, 2007 WL 2902954, at *4 (W.D.N.Y. Sept. 28, 2007) (dismissing claims against a defendant because "[the] plaintiffs have not alleged factual evidence, outside of this isolated incident, which would create an inference of a custom or policy created by [the defendant]").[8]

### 2.  Due Process Claim Against Gutwein and Coccuzza

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration omitted).  The Court considers these two requirements in turn.

---

[8] Because the Court dismisses Plaintiff's claims against Venettozi on qualified immunity grounds, the Court does not consider Venettozi's personal involvement.  (Defs.' Mem. 16–18.)

### a.  Deprivation of a Liberty Interest

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Id*. (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  In evaluating whether the length and conditions of disciplinary confinement create an atypical and significant hardship, the Second Circuit has advised that "[w]here the plaintiff was confined for . . . between 101 and 305 days . . . development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required."  *Palmer v. Richards*, 364 F.3d 60, 64–65 (2d Cir. 2004) (quotation marks omitted).  The Second Circuit has concluded that a plaintiff sufficiently alleges an infringed liberty interest, for example, where he alleges "beyond the normal SHU conditions . . . that he endured far inferior hygienic conditions in SHU."  *Id*. at 66 (quotation marks omitted).  The Second Circuit stated that normal SHU conditions include confinement for 23 hours per day, permitted exercise in the prison yard for one hour per day, two showers per week, denial of privileges such as work and out-of-cell schooling, restricted visitors, and a limited number of books in the cell.  *Id*. at 65 n.3.

Here, Plaintiff adequately alleges atypical and significant hardship beyond normal SHU conditions.  First, Plaintiff alleges far inferior hygienic conditions, including "huge cockroaches and rodents," (Am. Compl. 18), and "inmates spitting on each other, [and] throwing feces," (Pl.'s Mem. 16).  *See Palmer*, 364 F.3d at 66.  Second, beyond typical SHU restrictions on visitors and the number of books, Plaintiff's disciplinary confinement involved deprivation of property, pictures, reading materials, hygienic products and materials, and "being out of communication with family and friends."  (Pl.'s Mem. 16, 18.)  *See Palmer*, 364 F.3d at 66 (finding that an affidavit attesting to similar deprivations "raises genuine questions of material fact as to . . . how

those conditions compared to the conditions imposed on the general prison population").  Third,

Plaintiff alleges that he was not permitted an hour of exercise per day, but, instead, he was made

to spend this hour "in full restraints (handcuffs with waist chain)[,] which made it impossible to

exercise," (Am. Compl. 18; *see also* Pl.'s Mem. 16), and he was "denied [r]ec. whenever [the]

[o]fficer felt like it," (Pl.'s Mem. 18).  *Cf. McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020)

("Courts have recognized that some opportunity for exercise must be afforded to prisoners."

(quoting *Anderson v. Coughlin*, 757 F.2d 33, 34–35 (2d Cir. 1985) (collecting cases)).  Plaintiff

alleges that these conditions existed in addition to the typical SHU conditions—23 hours of

confinement per day and two showers per week.  (Am. Compl. 17.)

Plaintiff further alleges that he suffered a variety of mental, physical, and emotional

ailments as a result of his disciplinary confinement.  (*Id*. at 19.)  These ailments caused Plaintiff

to "suffer[] through a divorce and [a] broken bond with [his d]aughter."  (Pl.'s Mem. 18.)  These

allegations make Plaintiff's claim plausible, because "evidence of the psychological effects of

prolonged confinement in isolation" contribute to comparing disciplinary conditions to those of

normal prison life.  *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000).  Thus, Plaintiff

adequately alleges that he was deprived of a protected liberty interest.

### b.  Sufficiency of Process

"Inmates are entitled to advance written notice of the charges; a fair and impartial hearing

officer; a reasonable opportunity to call witnesses and present documentary evidence; and a

written statement of the disposition, including supporting facts and reasons for the action taken."

*Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).  Here, Plaintiff does not allege that Defendants

failed to provide him with written notice of the charges, (*see* Am. Compl. 31 ("All I got is the

ticket."); *see also* Am. Compl. 24), or a written statement of the disposition, (*see* Hearing

13

Disposition).  And, as discussed, Plaintiff's allegations of bias are implausible.  Further, Gutwein satisfied the constitutional requirement to base his ruling on "some evidence."  (2019 Op. 14–15.)  *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985) ("[R]evocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." (citation omitted)).

Thus, only Plaintiff's reasonable opportunity to call witnesses and present documentary evidence remains at issue.  These rights are qualified, as "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence."  *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).  This right "can be denied on the basis of irrelevance or lack of necessity."  *Jackson v. Prack*, No. 16-CV-7561, 2019 WL 6119010, at *7 (S.D.N.Y. Nov. 18, 2019) (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)).  It is similarly "circumscribed by the penological need to provide swift discipline in individual cases."  *Id.* (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)).  "[T]he due process clause does not require prison officials to state on the record their reasons for denying an inmate's request to confront a particular witness."  *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986).  However, in the absence of such an explanation, "defendants cannot justify a Rule 12(b)(6) dismissal for failure to state a claim."  *Thomas v. Calero*, 824 F. Supp. 2d 488, 502 (S.D.N.Y. 2011); *see also Rossi v. Stevens*, No. 04-CV-1836, 2005 WL 8146896, at *12 (S.D.N.Y. May 2, 2005) (report and recommendation) (finding that the plaintiff states a claim where his requests for documents were "denied without explanation").

14

In addition, Plaintiff has a similar limited right to an assistant. *See Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990) ("[A] failure to provide an inmate assistance in preparing a defense or interview an inmate's requested witnesses without assigning a valid reason may in the future provide a sufficient basis for a viable § 1983 action.").  The assistant "is not obliged to go beyond the specific instructions of the inmate." *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).  "The total failure to provide the required assistance may be a 'structural' error not susceptible to harmless error analysis." *Louis v. Ricks*, No. 01-CV-9368, 2002 WL 31051633, at *15 n.28 (S.D.N.Y. Sept. 13, 2002).  However, where an inmate is assisted, but the "assistant performed certain tasks inadequately," a plaintiff's claim is "subject to harmless error analysis." *Id*.

Here, the Court finds that the following allegations are sufficient to state a due process violation: (1) Coccuzza's and Gutwein's failure to provide Plaintiff with video footage of A&M Yard at the time of the incident; (2) Coccuzza's and Gutwein's failure to provide Plaintiff with requested documents, including the A&M Yard staff log book, unusual incident reports, and to/from memos; and (3) Gutwein's failure to collect testimony from four COs who were on duty in A&B Yard at the time of the incident.

Regarding the video footage, Plaintiff alleges that he requested it in early April, shortly after the incident, (Am. Compl. 4, 27–28), that it was available at the time of his request, (Pl.'s Mem. 7), that Coccuzza and Gutwein did not attempt to retrieve the video until June 4, 2015, at which point it no longer existed, (Pl.'s Mem. 5, 7, 13, 19), and that the failure to find this video prejudiced Plaintiff's defense, (Pl.'s Mem. 8).  There is no basis on the record to conclude at this stage that the failure to retain this video footage was harmless error. *Cf. Tafari v. Rock*, No. 10-CV-0729, 2012 WL 1340799, at *6 (W.D.N.Y. Apr. 18, 2012) (dismissing the plaintiff's complaint where it "contain[ed] no hint as to the contents of the videotape or how the tape would

15

have been relevant and material to his defense").  The video may have supported Plaintiff's

position that he was not guilty of misconduct.  Unlike prior cases dismissing at summary

judgment constitutional challenges based on similar denial of access to videotapes, there is no

indication in the record that the tape did not exist at the time of Plaintiff's request.  *See Molano*

*v. Bezio*, 42 F. Supp. 3d 465, 468–69 (W.D.N.Y. 2012) ("There is no proof that a surveillance

videotape of the holding pen existed at the time plaintiff requested it."); *see also Barnes v.*

*Annucci*, No. 15-CV-777, 2019 WL 1387460, at *13 (N.D.N.Y. Mar. 12, 2019) ("[T]he record is

clear that the evidence did not exist inasmuch as it had been taped over in the normal course of

business by the time the conspiracy had been uncovered."), *report and recommendation adopted*,

2019 WL 1385297 (N.D.N.Y. Mar. 27, 2019), *appeal docketed*, No. 19-972 (2d Cir. Apr. 11,

2019).[9]

      Regarding the documents, Plaintiff alleges that he requested them, (Am. Compl. 3–4, 27–

28; Pl.'s Mem. 8), but that they were not provided to him, (Pl.'s Mem. 14, 22).  There is no

suggestion in the record that the log book and unusual incident reports did not exist.  (*See*

Assistance Form.)  While Crofoot testified that he did not recall writing any memos regarding

the incident, (Am. Compl. 55), the record does not indicate that Gutwein made a finding that

such memos did not exist.  Further, the Court cannot conclude as a matter of law, based on this

record, that the failure to provide these documents was harmless error.  *See White v. Marinelli*,

No. 17-CV-1094, 2019 WL 1090802, at *14 (N.D.N.Y. Mar. 8, 2019) (holding that, where

harmless error is an affirmative defense, "it would be incumbent on prison officials [at the

---

[9] Plaintiff also requested video of the hearing room, (Am. Compl. 44), to serve as
evidence of Gutwein's bias, (Pl.'s Mem. 14).  Because the Court has dismissed allegations
related to Gutwein's bias, it also dismisses allegations related to Defendants' failure to provide
video of the hearing room.

16

pleadings stage] to show it clear from the face of the complaint and matters of which the court may take judicial notice that any such errors were harmless" (citation and quotation marks omitted)); *cf. Lainfiesta v. Artuz*, 253 F.3d 151, 158 (2d Cir. 2001) (holding that, in the harmless error inquiry on habeas review, "[t]he burden of persuasion is on the government").  Unusual incident reports and to/from memos concerning the incident likely spoke to Plaintiff's guilt. *Giano v. Sullivan*, 709 F. Supp. 1209, 1215–16 (S.D.N.Y. 1989) ("[R]eports made by corrections officers in the immediate vicinity of the charged violations are virtually certain to be relevant to the issue of the petitioner's guilt of those violations.").[10]  Further, the log book may have supported Plaintiff's theory that Crofoot was not one of the officers working in A&B Yard at the time of the incident.  (*See* Am. Compl. 54.)  Finally, since Plaintiff was at no point provided with these documents, (*see* Pl.'s Mem. 3), the Court does not at this stage hold him to an exacting standard of alleging the prejudice caused by this denial, *cf. Giano*, 709 F. Supp. at 1216 ("Petitioner did not present a defense precisely because he was unconstitutionally deprived of the tools necessary to do so.").

That four inmate witnesses testified does not change the Court's conclusion, based on the pleadings, that Coccuzza's assistance did not satisfy the constitutional minimum.  "[A]n inmate's right to assistance is limited" because the assistant is not obligated to act as advocate or counsel. *Silva*, 992 F.2d at 22.  For example, the assistant need not "go beyond the specific instructions of the inmate," *id.*, or "explain the charges to [the inmate]," *Grant v. Fischer*, No. 14-CV-1382,

---

[10] While the court in *Giano* noted that documents were especially important because "no eyewitness accounts [were] otherwise available," 709 F. Supp. at 1216, it does not follow that the presence of eyewitnesses reduces to zero the potential importance of documents.  This is particularly true where, as here, eyewitness accounts conflict, (*see* Hearing Disposition), and Plaintiff was not permitted to call four possible eyewitnesses to testify, (Am. Compl. 63; Pl.'s Mem. 13).

2017 WL 1180866, at *3 (N.D.N.Y. Mar. 29, 2017), *aff'd*, 760 F. App'x 20 (2d Cir. 2019).

However, subject to harmless error analysis, an assistant must fulfill inmate requests or explain

why he failed.  *See Elder v. McCarthy*, 967 F.3d 113, 127 (2d Cir. 2020) (finding "a failure to

assist [the inmate] in good faith and in his best interests"  where an assistant "failed to procure

[requested] documents [and] gave no reason for his failure" (alterations and quotation marks

omitted)); *see also Grant*, 2017 WL 1180866, at *3 (finding that an assistant fulfilled her

obligations where she returned five out of ten requested materials, and informed the inmate

plaintiff that the remaining materials were "not available, not alleged, or did not exist").  Even

assuming that he was partially successful, these successes would not nullify Coccuzza's

unexplained failures.

Regarding the testimony of the four COs present in A&B Yard at the time of the incident,

Plaintiff alleges that he requested testimony from them, (Am. Compl. 63), and that Gutwein did

not permit them to testify, (Pl.'s Mem. 13).  At this stage, as with the withheld documents, the

record contains no basis to conclude that this exclusion was harmless error as a matter of law.

This testimony may have supported Plaintiff's claims that he did not commit the charged offense

and that Crofoot was not in A&B Yard at the time of the incident.  At a minimum, the record

does not suggest a finding that it would have been futile to interview these COs.  *See Silva*, 992

F.2d at 21–22.  Thus, Plaintiff sufficiently alleges that failing to interview these witnesses

violated his right to due process.  *Fox*, 893 F.2d at 478 ("[A]n inmate's due process rights are

violated when a prison hearing officer refuses to interview witnesses without assigning a reason

logically related to preventing undue hazards to institutional safety or correctional goals."

(quotation marks omitted) (citing *Ponte*, 471 U.S. at 497)).

Apart from Gutwein's written statement on June 3, 2015 regarding video of A&B Yard at the time of the incident that "none exists," (Am. Compl. 44), the record contains no indication that Gutwein found that the requested material or testimony did not exist, was irrelevant, or would conflict with institutional safety or correctional goals.  The Court notes that the record of the disciplinary proceeding provided by Plaintiff is incomplete.  To the extent that the missing pages indicate Gutwein's rationale for excluding the requested evidence, they may be introduced at summary judgment.[11]

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied in part.  All claims against Carey, Crofoot, and Venettozi are dismissed.  Also dismissed are Plaintiff's claims that he was denied his right to a fair and impartial hearing officer and his right to not be found guilty of prison disciplinary charges without some reliable evidence to support them.  Dismissal is with prejudice.[12]  Plaintiff may proceed on his due process claim, including his denial of adequate assistance claim, against Gutwein and Coccuzza.

---

[11] To the extent Gutwein and Coccuzza also make a qualified immunity argument, (*see* Defs.' Mem. 18–20), they merely recite the qualified immunity case law without meaningfully applying it to the facts of the case.  Indeed, in applying the law, Gutwein and Coccuzza merely repeat arguments from earlier in their brief.  (*Id*. at 19.)  "The Court therefore declines to consider at this time whether [Gutwein and Coccuzza] are protected by qualified immunity." *Osorio v. Westchester County*, No. 18-CV-5620, 2019 WL 3958443, at *1 n.2 (S.D.N.Y. Aug. 21, 2019).

[12] Even pro se plaintiffs are not entitled to amend a complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan 3, 2012).  Here, Plaintiff "has already had two bites at the apple, and they have proven fruitless." *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (alterations omitted); *see also Al-Qadaffi v. Servs. for the Underserved*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where the plaintiff "has already had one chance to amend his [c]omplaint, and there is still no indication that a valid

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 51), and to mail a copy of this Opinion & Order to Plaintiff.

The Court will hold a status conference via teleconference on March 3, 2021, at 10:30AM.

SO ORDERED.

DATED:      January 31, 2021
            White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

claim might be stated if given a second chance"), *aff'd*, 632 F. App'x 31 (2d Cir. 2016).  The Court finds that further amendment on these claims would be futile.