UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHNNY B. BROWN,

                                        Plaintiff,

        v.

DONALD VENETTOZZI, *et al.*,

                                        Defendants.

No. 18-CV-2628 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Johnny B. Brown
Marcy, NY
*Pro Se Plaintiff*

Kathryn E. Martin, Esq.
Office of the New York State Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Johnny B. Brown ("Plaintiff"), proceeding pro se, brings this Action against

Commissioner's Hearing Officer Eric Gutwein ("Gutwein") and Sergeant Robert Cocuzza

("Cocuzza"; together with Gutwein, "Defendants") pursuant to § 1983, based on Defendants'

alleged violation of Plaintiff's Fourteenth Amendment due process rights in connection with a

disciplinary hearing in which Plaintiff was found guilty of fighting with another inmate while

incarcerated at Green Haven Correctional Facility ("Green Haven") and sentenced to, inter alia,

Special Housing Unit ("SHU") confinement for 210 days.  (*See generally* Am. Compl. (Dkt.

No. 41).)  Before the Court is Defendants' Motion for Summary Judgment (the "Motion").  (*See*

Not. of Mot. (Dkt. No. 81).)  For the following reasons, the Motion is granted.

<u>I.  Background</u>

<u>A.  Factual Background</u>

The following facts are taken from Defendants' Statement pursuant to Local Civil Rule

56.1, (*see* Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 85)), and the admissible evidence

submitted by Defendants.[1]  These facts are recounted "in the light most favorable to" Plaintiff,

the non-movant.  *See Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021).  The facts

below are in dispute only to the extent indicated.[2]

---

[1] As explained *infra*, Plaintiff did not respond to Defendants' Motion, and therefore, has not submitted any evidence to the Court.

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The non-moving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  "Pro se litigants are not excused from meeting the requirements of Local Rule 56.1," *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021) (italics, alteration, and citation omitted), and "[a] non[-]moving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same).

Here, Defendants filed and served their Statement pursuant to Rule 56.1, (*see* Dkt. Nos. 85, 88), and filed and served a Statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (*see* Dkt. Nos. 86, 88).  Despite this notice, Plaintiff failed to submit a response either to Defendants' 56.1 Statement, in particular, or Defendants' Motion, in general.  Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible.  *See Brandever v. Port Imperial Ferry Corp.,* No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal,* No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record," including Plaintiff's deposition testimony, when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted); *see also Day v. MTA N.Y.C.*

Plaintiff entered the custody of the New York Department of Corrections and Community Supervision ("DOCCS") in 1996, *see* Incarcerated Lookup, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, https://nysdoccslookup.doccs.ny.gov/, and entered Green Haven Correctional Facility ("Green Haven") in 2014, (*see* Decl. of Kathryn Martin in Supp. of Mot. ("Martin Decl.") (Dkt. No. 84) Ex. A ("Pl. Dep."), at 13:7–14 (Dkt. No. 84-1)). While Plaintiff is currently housed at Mid-State Correctional Facility, (*see* Dkt.), he was housed at Green Haven at all times relevant to this Action.

On March 29, 2015, Plaintiff was issued a misbehavior report for four separate rule violations based on a fight that took place at approximately 2:25PM that day between Plaintiff and another inmate in the A&B Yard at Green Haven. (*See* Defs.' 56.1 ¶ 3; *see also* Martin Decl. Ex. C (Dkt. No. 84-3).) Correction officers later recovered a razor-type weapon in the area of the A&B Yard where Plaintiff had been observed to be fighting, which correction officers found to be consistent with the injuries suffered by Plaintiff's opponent. (*See* Defs.' 56.1 ¶¶ 4, 5; Martin Decl. Ex. C.) Plaintiff was then issued a second inmate report for possession of a

---

*Transit Auth.*, No. 17-CV-7270, 2021 WL 4481155, at *9 (S.D.N.Y. Sept. 30, 2021) ("[W]here a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and citation omitted)); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 502 n.1 (S.D.N.Y. 2015) (considering "the statements and documents in [the] [p]laintiff's opposition papers to determine if there are any material issues of fact based on the evidence in the record," but disregarding factual assertions that "do not contain citations to the record, or are not supported by the citations in the record"); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).

weapon.  (*See* Defs.' 56.1 ¶ 6; *see also* Martin Decl. Ex. D (Dkt. No. 84-4).)  Plaintiff denies that

he was fighting or that he possessed a weapon; rather, Plaintiff claims that the other inmate had

been assaulted by a third inmate and sustained a cut earlier in the day—an hour before the

incident with Plaintiff—and merely swung his coat at Plaintiff before correction officers

intervened.  (*See* Pl. Dep. 19:6–25.)  In any event, after correction officers intervened in the

incident between Plaintiff and the other inmate, Plaintiff was brought first to the Green Haven

infirmity and then, after he was examined and found to be uninjured, to the SHU pending his

disciplinary hearing.  (*See id.* at 25:9–25.)

Gutwein was designated as the hearing officer to conduct the Tier III disciplinary hearing

on Plaintiff's misbehavior reports, and Cocuzza was designated as Plaintiff's assistant.  (*See*

Defs.' 56.1 ¶ 7.)  Plaintiff's disciplinary hearing was scheduled to run between April 4, 2015 and

April 11, 2015.  (*See* Martin Decl. Ex. E (Dkt. No. 84-5).)  On April 2, 2015, Cocuzza met with

Plaintiff in Plaintiff's cell to ask Plaintiff what he would need for his defense in the disciplinary

hearing.  (*See* Defs.' 56.1 ¶ 8; *see also* Pl. Dep. 26:24–27:6.)  Plaintiff identified the cell numbers

of the four inmates that Plaintiff wanted to call as witnesses and requested copies of (1) the A&B

Yard logbook to identify the correction officers staffing the yard at the relevant time; (2) the

Unusual Incident report ("UI report"), including any to/from memoranda; and (3) video footage

from the surveillance cameras in the A&B Yard.  (*See* Defs.' 56.1 ¶¶ 9–11; Pl. Dep. 27:7–24.)

Defendants appear to dispute that Plaintiff requested video footage from the surveillance cameras

in the A&B Yard at this point in time, because Cocuzza did not record this request in the

assistant form.  (*See* Martin Decl. Ex. L (Dkt. No. 84-12); *see also* Defs.' 56.1 ¶¶ 10, 20.)  In

response to these requests, Cocuzza asked the four inmates Plaintiff identified if they would

agree to testify (three agreed to do so), identified the correction officers working in the A&B

4

Yard at the relevant time, and noted in the assistant form that the UI report and any to/from memoranda would be provided to Plaintiff during the disciplinary hearing. (*See* Defs.' 56.1 ¶¶ 12–14.) Cocuzza returned to Plaintiff's cell later that same day to relay this information to Plaintiff; Plaintiff refused to sign the assistant form. (*See* Decl. of Robert Cocuzza in Supp. of Mot. ("Cocuzza Decl.") ¶¶ 13–14 (Dkt. No. 83).)[3]

Plaintiff's disciplinary hearing began on April 7, 2015 and continued on April 9, May 13, June 1, and June 3. (*See* Defs.' 56.1 ¶ 15.) On April 7, 2015, the hearing commenced with Gutwein reading Plaintiff's misbehavior reports into the record, to which Plaintiff pleaded not guilty. (*See id.* ¶ 17.) After Plaintiff pleaded not guilty to each charge, Plaintiff requested—either for the first time or for a second time, *see supra*—video footage from the surveillance cameras in the A&B Yard. (*See* Defs.' 56.1 ¶ 20.) Plaintiff also reiterated his requests for the UI report and the A&B Yard logbook. (*See id.* ¶ 21.)

At some point between April 7 and April 10, 2015, Gutwein requested that Correction Officer Joseph Martin ("Martin")—who worked in the disciplinary office at that time—to

---

[3] At his deposition, Plaintiff claimed that Cocuzza never returned to his cell to provide him with this information and accordingly that Plaintiff never refused to sign the assistant form. (*See* Pl. Dep. 29:21–30:6 ("I never saw this [assistant form], so I couldn't have signed it. But I wouldn't have signed it anyways, because he didn't provide what I requested. But he never even came back, that's the thing.").) However, at his disciplinary hearing only five days after Cocuzza's alleged cell visit, Plaintiff confirmed that Cocuzza did in fact return to his cell to provide him with information about the materials and witnesses Plaintiff had requested. (*See also* Martin Decl. Ex. F ("Hr'g Tr."), at 11 (requesting a new assistant and explaining that "[Cocuzza] then come back [to Plaintiff's cell] and got mad at [Plaintiff] 'cause I . . . kept asking for paper[;] [h]e came back, he told me that [the four inmates] (unintelligible) testify"); *id.* at 12 ("[Cocuzza] did tell me that he would have had all of my paperwork at the (unintelligible) and that those witnesses were going to testify (unintelligible)."); *see also* Defs.' 56.1 ¶ 19.) "In the face of contemporaneous evidence in Plaintiff's own words, [his] self-serving comments from [his] deposition after the filing of this lawsuit cannot create an issue of fact" as to whether Cocuzza ever returned to Plaintiff's cell to provide him with the information listed in the assistant form. *Kunik v. N.Y.C. Dep't of Educ.*, 436 F. Supp. 3d 684, 695 (S.D.N.Y. 2020) (collecting cases).

provide Plaintiff with a copy of the full UI report.  (*See* Decl. of Eric Gutwein ("Gutwein Decl.")
¶ 18 (Dkt. No. 82).)  On April 10, 2015, Martin submitted a memorandum to Gutwein in which
he advised that "on the morning of 4/10/15 I gave [Plaintiff] his copy of the UI Packet that he
requested."  (Martin Decl. Ex. H (Dkt. No. 84-8); *see also* Defs.' 56.1 ¶ 26.)  The SHU logbook
also reflects that Martin entered the SHU at 7:40AM on April 10, 2015 to deliver paperwork
related to Plaintiff's disciplinary hearing.  (*See* Martin Decl. Ex. I (Dkt. No. 84-9); *see also*
Defs.' 56.1 ¶ 27.)

Between April 9 and June 1, 2015, Plaintiff called and questioned five inmates as
witnesses and Gutwein called and questioned three DOCCS employees, who Plaintiff was also
permitted to question.  (*See* Defs.' 56.1 ¶¶ 28–30.)  On June 1, 2015, Plaintiff requested the
testimony of, inter alia, Correction Officers Alvarez, Boyd, Warner, and DeSantos, who Plaintiff
identified as the correction officers working in the A&B Yard at the time of the incident.  (*See
id.* ¶¶ 31–32.)  On the following hearing day, June 3, 2015, Gutwein asked Plaintiff if he "still
wish[ed] to call the[se] witnesses," to which Plaintiff responded: "No, you need not worry about
that."  (Hr'g Tr. 61; *see also* Defs.' 56.1 ¶ 33.)  Gutwein then asked Plaintiff if he wished to
submit any additional evidence, to which Plaintiff responded no.  (*See* Defs.' 56.1 ¶ 34.)

After the close of evidence on June 3, 2015, Gutwein verbally informed Plaintiff that his
request for video footage from the surveillance cameras in the A&B Yard was denied because no
such footage existed.  (*See id.* ¶ 35.)  Gutwein later issued a written denial, which stated: "Inmate
requested video of the incident from the tower and rec door which is not available as none exists
and therefore denied."  (*Id.* ¶ 36.)  To be clear, no video footage ever existed.  (*See id.* ¶ 37.)[4]

---

[4] While Plaintiff has alleged that the reason that no footage existed was because video
footage is only preserved for 14–30 days and by the time Gutwein denied Plaintiff's request, the
footage had already been deleted, (*see* Op. & Order ("Feb. Op.") 3–4 (Dkt. No. 58).), Gutwein

Gutwein then read his written disposition into the record, finding Plaintiff guilty of all charges except the weapon possession charge. (*See* Defs.' 56.1 ¶ 40.) Gutwein imposed a penalty of 210 days of SHU confinement, loss of commissary, phone, and package privileges, and loss of seven months of good time. (*See* Hr'g Tr. 64–65.) After several unsuccessful attempts at appeal, (*see* Am. Compl. 51), DOCCS administratively reversed Gutwein's decision on November 3, 2016, (*see id.* at 52).[5] However, at the time Gutwein's decision was reversed, Plaintiff had already served his full 210-day SHU penalty, which Plaintiff claims has caused him intense emotional distress. (*See* Pl. Dep. 56:8–58:7.)

B.  Procedural History

Plaintiff's initial Complaint was docketed on March 23, 2018, in which Plaintiff brought claims against Gutwein, Correction Officer J. Crofoot ("Crofoot"), Captain Carey ("Carey"), and Director of Special Housing/Inmate Disciplinary Programs Donald Venettozzi ("Venettozzi"; collectively, "OC Defendants") based on the same course of conduct as set out above. (*See* Compl. (Dkt. No. 2).) On November 2, 2018, OC Defendants filed a pre-motion letter in

---

has attested that this is not the case, (*see* Gutwein Decl. ¶¶ 12–15). Plaintiff requested footage from two cameras, one located in the guard tower and one facing the recreation door. (*See id.* ¶ 7.) However, Gutwein explained that no video footage was ever taken of the incident via the guard tower camera (and, in any event, that footage that is taken via the guard tower camera is never taped over or overwritten) and that the camera over the recreation door does not record because it is only used for monitoring. (*See id.* ¶¶ 14–15.) Plaintiff confirmed at his deposition that he did not know if either camera was recording during the incident, (*see* Defs.' 56.1 ¶¶ 38–39), and therefore cannot create an issue of fact as to this point. *See DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) ("[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" (quoting Fed. R. Civ. P. 56(c)(4))); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading.").

[5] When citing to the Amended Complaint and the documents attached thereto (as here), the Court references the ECF-stamped page number on the top right-hand corner of each page.

7

anticipation of filing a motion to dismiss the original Complaint. (*See* Dkt. No. 24.) The Court

set a briefing schedule, (*see* Dkt. No. 25), and pursuant to that schedule, OC Defendants filed

their Motion To Dismiss the original Complaint on December 13, 2018, (*see* Not. of Mot. To

Dismiss Compl. (Dkt. No. 28); OC Defs.' Mem. of Law in Supp. of Mot. To Dismiss Compl.

(Dkt. No. 29).) Plaintiff filed his response on February 12, 2019, (*see* Pl.'s Mem. of Law in

Opp'n to OC Defs.' Mot. To Dismiss (Dkt. No. 33)), to which OC Defendants replied on

February 28, 2019, (*see* OC Defs.' Reply Mem. in Supp. of OC Defs.' Mot. To Dismiss (Dkt.

No. 34)). Plaintiff filed a sur-reply on March 13, 2019. (*See* Pl.'s Sur-Reply in Supp. of OC

Defs.' Mot. To Dismiss Compl. (Dkt. No. 35).) On September 4, 2019, the Court granted OC

Defendants' Motion To Dismiss in its entirety, dismissing Plaintiff's claims without prejudice.

(*See* Op. & Order (Dkt. No. 37).) In the Opinion & Order, the Court set a 30-day deadline on the

filing of an amended complaint. (*See id.* at 16.)

Plaintiff failed to abide by this 30-day deadline, so on November 6, 2019, the Court

entered an Order to Show Cause, ordering Plaintiff to show cause by no later than December 6,

2019 as to why the case should not be dismissed for failure to prosecute. (*See* Order To Show

Cause (Dkt. No. 40).) Plaintiff's Amended Complaint was docketed on November 12, 2019, in

which Plaintiff brough claims against Gutwein, Crofoot, Carey, Cocuzza, and Venettozzi ("AC

Defendants"). (*See generally* Am. Compl. (Dkt. No. 41).)

AC Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss the

Amended Complaint on February 3, 2020. (*See* Dkt. No. 49.) The Court set a briefing schedule,

(*see* Dkt. No. 50), and on March 13, 2020, AC Defendants filed their Motion To Dismiss the

Amended Complaint, (*see* Mot. To Dismiss Am. Compl. (Dkt. No. 51); AC Defs.' Mem. of Law

in Supp. of AC Defs.' Mot. To Dismiss Am. Compl. (Dkt. No. 52)). Due to a mailing issue

which resulted in AC Defendants receiving Plaintiff's Opposition several weeks before the Court

received Plaintiff's Opposition, Plaintiff's Opposition was docketed on June 2, 2020 and AC

Defendants' Reply was docketed on May 29, 2020.  (*See* Pl.'s Mem. of Law in Opp'n to AC

Defs.' Mot. To Dismiss Am. Compl. (Dkt. No. 57); AC Defs.' Reply Mem. of Law in Supp. of

AC Defs.' Mot. To Dismiss Am. Compl. (Dkt. No. 55).)  On February 1, 2021, the Court granted

in part and denied in part AC Defendants' Motion To Dismiss the Amended Complaint.  (*See*

Feb. Op..)  The Court dismissed with prejudice all of Plaintiffs' claims against Crofoot, Carey,

and Venettozzi and certain of Plaintiffs' claims against Gutwein.  (*See id.* at 9–11.)  However,

the Court allowed to proceed Plaintiff's Fourteenth Amendment claims against Cocuzza and

Gutwein based on (1) Cocuzza and Gutwein's alleged failure to provide Plaintiff with video

footage of A&B yard at the time of the incident; (2) Cocuzza and Gutwein's alleged failure to

provide Plaintiff with requested documents, including the A&B Yard staff logbook, unusual

incident reports, and to/from memos; and (3) Gutwein's alleged failure to collect testimony from

four correction officers who were on duty in A&B Yard at the time of the incident.  (*See id.* at

11–19.)

Defendants filed their Answer on March 9, 2021, (*see* Answer (Dkt. No. 60)), and the

Parties proceeded to discovery, (*see* Dkt. Nos. 62–75).  The Court held a case management

conference on December 13, 2021 and adopted a briefing schedule on Defendants' then-

anticipated motion for summary judgment.  (*See* Dkt. (entry for Dec. 13, 2021); Dkt. No. 79.)

Defendants filed their Motion for Summary Judgment, Rule 56.1 Statement, and accompanying

papers on January 31, 2022.  (*See* Not. of Mot.; Defs.' 56.1; Defs.' Mem. of Law in Supp. of

Mot. ("Defs.' Mem.") (Dkt. No. 87); Gutwein Decl.; Cocuzza Decl.; Martin Decl.; Rule 56.2

Not. (Dkt. No. 86); Aff. of Service (Dkt. No. 88).)

Pursuant to the briefing schedule adopted on December 13, 2021, Plaintiff's response to Defendants' Motion was to be due no later than March 5, 2022, (*see* Dkt. No. 79); however, on March 25, 2022, a letter from Plaintiff (dated March 13, 2022) was docketed in which Plaintiff sought an extension of time, (*see* Dkt. No. 89).  The Court granted Plaintiff an extension to April 25, 2022.  (*See* Dkt. No. 90.)  Plaintiff failed to file a response to Defendants' Motion despite this extension, (*see* Dkt.), and accordingly, the Court deemed Defendants' Motion fully submitted on May 12, 2022, (*see* Dkt. No. 92).  However, on May 24, 2022, another letter from Plaintiff (dated May 17, 2022), was docketed, in which Plaintiff explained that he had attempted to file a response to Defendants' Motion, and would send another copy of his response "tomorrow."  (Dkt. No. 93.)  The Court still did not receive any papers from Plaintiff, so on June 23, 2022, the Court granted Plaintiff a final extension until July 7, 2022, warning Plaintiff that "[t]here will be no further extensions."  (Dkt. No. 95.)  To date, despite the Court's nearly four months' worth of extensions, Plaintiff has failed to file a response to Defendants' Motion.  (*See generally* Dkt.)  Accordingly, Defendants' Motion is deemed fully submitted.

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also*

*Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright*, 554 F.3d at 266 ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso*, 691 F.3d at 230 (quoting FED. R. CIV. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham,* 848 F.2d at 344; *Mercado v. Div. of N.Y. State Police,* No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest,"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Further, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment."  *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)).  Nonetheless, "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment."  *Houston*, 27 F. Supp. 3d at 351 (italics and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

## B.  Analysis

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration omitted) (quoting *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).  There is no dispute that Plaintiff has established that he possessed a liberty interest based on the atypically difficult conditions in which he was held in the SHU, (*see generally* Defs.' Mem.; *see also* Feb. Op. 12–13); rather, Defendants argue that Plaintiff has failed to establish that Defendants deprived him of sufficient process because the undisputed evidence demonstrates that Plaintiff was in fact not denied process or that any denial of process was harmless error, (*see* Defs.' Mem. 7–11).

"The due process protections afforded a prison inmate do not equate to 'the full panoply of rights' due to a defendant in a criminal prosecution."  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).  However, "[a]s the Supreme Court has held, due process requires that in a disciplinary

hearing resulting in imposition in loss of good time credits or solitary confinement, an inmate

must be afforded advance written notice of the charges against him and a written statement of

fact findings supporting the disposition and reasons for the disciplinary action taken."

*Kalwasinksi v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (per curiam) (citing *Wolff v. McDonnell*,

418 U.S. 539, 563–64 (1974)); *accord Elder v. McCarthy*, 967 F.3d 113, 124 (2d Cir. 2020)

(similar).  "Subject to legitimate safety and correctional goals of the institution, an inmate should

also be permitted to call witnesses and present documentary evidence."  *Kalwasinski*, 201 F.3d at

108 (citing *Wolff*, 418 U.S. at 566); *see also Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)

("The right to call witnesses is limited in the prison context, however, 'by the penological need

to provide swift discipline in individual cases' and 'by the very real dangers in prison life which

may result from violence or intimidation directed at either other inmates or staff.'" (quoting

*Ponte v. Real*, 471 U.S. 491, 495 (1985))).  An inmate also "has a right to a fair and impartial

hearing officer," *Kalwasinski*, 210 F.3d at 108 (citing *McCann v. Coughlin*, 698 F.2d 112, 121–

22 (2d Cir. 1983)), and "a hearing disposition must be supported by at least 'some evidence,'" *id.*

(quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).  However, none of these due process

rights is absolute, and accordingly are individually and collectively subject to harmless error

analysis.  *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) ("[I]t is entirely

inappropriate to overturn the outcome of a prison disciplinary proceeding because of a

procedural error without making the normal appellate assessment as to whether the error was

harmless or prejudicial.").

      Finally, "[p]rison authorities are . . . under a constitutional obligation to provide

assistance to an inmate preparing for a disciplinary hearing."  *Fox v. Coughlin*, 893 F.2d 475,

478 (2d Cir. 1990) (per curiam) (citing *Eng v. Coughlin*, 858 F.2d 889, 897–98 (2d Cir. 1988)).

However, "an inmate's right to assistance is limited"; the assistant is not equivalent to legal counsel and is obligated only to act as the inmate's "*surrogate*—to do what the inmate would have done were he able." *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (emphasis in original). Moreover, "[t]he assistant is not obliged to go beyond the specific instructions of the inmate," *id.*, and as with all other procedural rights in this context, "any violations of this qualified right are reviewed for 'harmless error,'" *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009) (quoting *Powell*, 953 F.2d at 750).

### 1.  Alleged Denial of Video Footage

Plaintiff's first Fourteenth Amendment due process claim is based on Defendants' alleged denial of video footage from two surveillance cameras in the A&B Yard.  *See supra* I.B. However, Defendants argue—and the Court agrees—that there is no genuine dispute that Plaintiff was not denied this video footage because the undisputed evidence demonstrates that the footage never existed in the first place.  (*See* Defs.' Mem. 10; *see also* Defs.' 56.1 ¶ 37; Gutwein Decl. ¶¶ 12–15.)  Clearly, Defendants cannot be held liable for failure to provide Plaintiff with evidence that did not exist.  *See Girard v. Chuttey*, 826 F. App'x 41, 45–46 (2d Cir. 2020) (summary order) (finding that the plaintiff "did not establish a genuine dispute of fact as to whether the defendants withheld [audio and video] evidence in violation of his constitutional rights" where "the defendants presented evidence that no . . . footage existed, and [the plaintiff] never supported his claim that there was . . . footage with an affidavit or other evidence"); *Molano v. Bezio*, 42 F. Supp. 3d 465, 468–69 (W.D.N.Y. 2012) (holding that "[the defendant-hearing officer's] refusal to order the production of [a surveillance tape], if any, does not amount to a denial of due process" where "[t]here is no proof that a surveillance videotape of the holding pen existed at the time [the] plaintiff requested it").

15

Accordingly, the Court grants summary judgment for Defendants on Plaintiff's due process claim based on Defendants' alleged denial of video footage.[6]

### 2. Alleged Denial of Requested Documents

Plaintiff's second Fourteenth Amendment due process claim is based on Defendants' alleged denial of the A&B Yard logbook and full UI report. *See supra* I.B. Defendants appear to argue that Plaintiff was not denied either document because the record evidence demonstrates that he received the pertinent information from the A&B Yard logbook and received the full UI report, and, in any event, that Plaintiff has failed to demonstrate that he was prejudiced by any denial of these documents. (*See* Defs.' Mem. 7–9.) The Court agrees.

Starting with the A&B Yard logbook: Plaintiff testified at his deposition that he requested the A&B Yard logbook "for the staffing." (Pl. Dep. 27:9–10.) This is also consistent with the assistant form, in which Cocuzza noted that Plaintiff requested "A&B Yard logbook *staff working*." (Martin Decl. Ex. L (emphasis added).) The record evidence demonstrates that Plaintiff was provided with the information as to who was staffing the A&B Yard during the incident, even if Plaintiff was not provided with the logbook itself. *See supra* I.A. Indeed, Plaintiff confirmed at his deposition that while he "didn't receive the logbook," he "received the information [he] wanted from the logbook." (Pl. Dep. 39:24–40:6.) Accordingly, the Court finds that any failure to provide Plaintiff with the logbook itself was harmless error. *See Marino*

---

[6] The Court notes that Defendants have treated Plaintiff's claim as to the video footage as brought against only Gutwein, due to Defendants' contention that Plaintiff never asked Cocuzza for the video footage. (*See* Defs.' Mem. 7 n.1.) However, Plaintiff disputes this and claims that he asked Cocuzza for the video footage during Cocuzza's initial visit to his cell, even if Cocuzza did not record this request on the assistant form. *See supra* I.A. As such, the Court construes Plaintiff's claim as to the video footage to be brought against both Gutwein and Cocuzza. (*See* Feb. Op. 15.) However, this does not ultimately affect the Court's conclusion, because both Gutwein and Cocuzza are entitled to summary judgment on this claim due to the fact that the undisputed evidence demonstrates that the footage in question never existed.

*v. Humphrey*, No. 05-CV-6571, 2006 WL 2786182, at *5 (S.D.N.Y. Sept. 27, 2006) ("Courts may find harmless error where a prisoner fails to show that the error negatively affected the outcome of the proceeding, or that it impaired the prisoner's ability to prepare a defense."); *cf. Chavez v. Gutwein*, No. 20-CV-342, 2021 WL 4248917, at *11 (S.D.N.Y. Sept. 17, 2021) ("[E]ven if [the defendant] denied [the] [p]laintiff's request to call [a nurse] as a witness, this denial would constitute harmless error, as [the nurse's] testimony would have been duplicative of other evidence in the hearing record.").

Turning to the UI report: there does appear to be a factual dispute over whether Plaintiff was provided with the full UI report. *See supra* I.A. At the outset, the Court must point out that Defendants' version of events appears to be far more likely, given that it is supported by Gutwein's affidavit, Martin's memorandum, the SHU logbook, and arguably Plaintiff's own statements during the disciplinary hearing, at the conclusion of which Plaintiff repeatedly confirmed that there was no additional evidence he wished to be produced on his behalf. *See supra* I.A.; *see also New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 326 (S.D.N.Y. 2015) ("[The plaintiff's] unsubstantiated and self-serving testimony is insufficient, without more, to defeat summary judgment." (collecting cases).). However, the Court need not and does not grant summary judgment to Defendants on this ground, finding instead that Plaintiff has not met his burden of demonstrating prejudice from this claimed denial. As the Court explained above, *see supra* II.A., "when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim, in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs.*, 735 F.3d at 123 (alteration

and quotation marks omitted).  Here, the burden of demonstrating prejudice is on Plaintiff, *see,*

*e.g.*, *Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) ("To establish a procedural

due process claim in connection with a prison disciplinary hearing, *an inmate* must show that he

was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome

of the hearing." (emphasis added) (collecting cases)), and Defendants rightly point out that

Plaintiff has entirely failed to demonstrate that his claimed denial of the UI report caused him

any prejudice.  (*See* Defs.' Mem. 9, 11.)  And in failing to respond to Defendants' Motion,

Plaintiff has failed to rebut the presumption that there is no genuine dispute that Plaintiff was not

prejudiced, which is fatal to Plaintiff's claim as to the UI report.

Accordingly, the Court grants summary judgment to Defendants on Plaintiff's due

process claim based on Defendants' alleged denial of the A&B Yard logbook and full UI report.

### 3.  Alleged Denial of Correction Officer Testimony

Plaintiff's third and final Fourteenth Amendment due process claim is based on

Gutwein's alleged failure to collect testimony from four correction officers who were on duty in

A&B Yard at the time of the incident.  *See supra* I.B.  However, Defendants argue—and the

Court, again, agrees—that there is no genuine dispute that Gutwein did not fail to collect this

testimony because it was Plaintiff who chose not to call and question these witnesses after being

given the opportunity to do so.  *See supra* I.A.  Gutwein cannot be held liable for failure to

collect testimony from the A&B Yard correction officers when it was Plaintiff who declined

their testimony.  *See Brooks v. Piecuch*, 245 F. Supp. 3d 431, 449 (W.D.N.Y. 2017) (finding that

"[the] [p]laintiff's contention that [the hearing officer] did not ask [a correction officer], while he

was testifying, [a particular question], cannot stand," because "[the] [p]laintiff was given the

opportunity to ask his desired question and forewent that opportunity," explaining that "[the

plaintiff's] failure to ask the question of his own volition cannot be a violation"); *cf. Logan v.*

*Harvey*, No. 16-CV-1412, 2017 WL 9511179, at *8 (N.D.N.Y. Sept. 26, 2017) (finding, on

motion to dismiss, that "[the] plaintiff received a reasonable opportunity to call witnesses and

present documentary evidence, and was not denied procedural due process on this ground" where

the hearing officer "asked if [the] plaintiff had any other witnesses he wished to call, and [the]

plaintiff declined"), *report and recommendation adopted*, 2017 WL 4261108 (N.D.N.Y. Oct. 16,

2017).

Accordingly, the Court grants summary judgment to Defendants on Plaintiff's due

process claim based on Gutwein's alleged failure to collect testimony from the A&B Yard

correction officers.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

The Clerk of Court is directed to terminate the pending Motion, (*see* Dkt. No. 81), enter

judgment for Defendants, mail a copy of this Opinion & Order to Plaintiff, and close this case.

SO ORDERED.

Dated:    August 30, 2022
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

19